IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JESSICA P., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:23CV92 |
| | ) |
| MARTIN J. O'MALLEY,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Jessica P. ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security, replacing Acting Commissioner Kilolo Kijakazi. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI in June 2019, alleging a disability onset date of January 31, 2018 in both applications. (Tr. at 12, 276-77.)[2]  Her applications were denied initially (Tr. at 75-100, 134-44) and upon reconsideration (Tr. at 101-30, 147-65). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 167-81.) On May 5, 2022, Plaintiff, along with her attorney, attended the subsequent telephonic hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 12.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 30), and, on December 7, 2022, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

---

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #5]. The record does not include a copy of Plaintiff's SSI application. However, this omission has no bearing on the outcome of Plaintiff's claims.

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

Case 1:23-cv-00092-JEP    Document 13    Filed 09/24/24    Page 3 of 14

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

4

capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. (Tr. at 16.) The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 16.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> bipolar disorder; obsessive compulsive disorder; anxiety, and depression[.]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

5

(Tr. at 16.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 17-18.) Therefore, the ALJ therefore assessed Plaintiff's RFC and determined that she could perform a full range of work at all exertional levels, but with the following, non-exertional limitations:

> no climbing of ladders, ropes, or scaffolds; no exposure to hazardous machinery or unprotected heights; able to understand, remember, and carry out simple tasks while maintaining attention and concentration for two hours at a time before requiring a regularly scheduled break; no fast-paced production; low stress work defined as only occasional decision-making and only occasional changes in the work setting; occasional interaction with coworkers and supervisors; and no interaction with the public.

(Tr. at 18.) At step four of the analysis, the ALJ determined, based on the testimony of the vocational expert, that all of Plaintiff's past relevant work exceeded the above RFC. (Tr. at 28.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled under the Act. (Tr. at 29-30.)

Plaintiff now contends that the ALJ's failure to define the term "no fast-paced production" prevents judicial review of Plaintiff's RFC assessment. (Pl.'s Br. [Doc. #8] at 1.) Plaintiff's challenge relies on the Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015) and its progeny. In Mascio, the Fourth Circuit explained that, where moderate limitations in concentration, persistence and pace are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work. Id. at 638-39. The Fourth Circuit specifically held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace

6

Case 1:23-cv-00092-JEP   Document 13   Filed 09/24/24   Page 6 of 14

by restricting the hypothetical question to simple, routine tasks or unskilled work." Id. at 638 (quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted). However, as previously noted in other cases in this District, the Fourth Circuit's decision in Mascio

> does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . .
>
> An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Tolbert v. Colvin, No. 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016) (finding that RFC limitations to "simple, routine, repetitive tasks with simple, short instructions, in a job that required making only simple, work-related decisions, involved few workplace changes, and required only frequent contact with supervisors, co-workers, or the public" sufficiently accounted for a plaintiff's moderate limitations in concentration, persistence, or pace in light of the ALJ's explanation throughout the administrative decision) (quoting Jones v. Colvin, No. 7:14CV273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20,

7

2015)); see also Sizemore v. Berryhill, 878 F.3d 72, 80–81 (4th Cir. 2017) (rejecting the plaintiff's argument under Mascio where the ALJ relied on the opinion of the state agency psychologist that, notwithstanding moderate limitations in concentration, persistence, and pace, the plaintiff could sustain attention sufficiently to perform simple, routine, repetitive tasks with additional limitations); Shinaberry v. Saul, 952 F.3d 113, 121-22 (4th Cir. 2020) (same, and noting that Mascio "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC").

In the present case, Plaintiff argues that the ALJ's failure to define the RFC limitation to "no fast-paced production" is problematic because the ambiguity of this phrase prevents the Court from determining whether the RFC adequately accounts for Plaintiff's moderate limitations in concentration, persistence, and pace, and moderate limitations in adapting or managing oneself, as identified at step three of the sequential analysis. (Pl.'s Br. at 13.) As Plaintiff correctly notes, in Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir. 2019), the Fourth Circuit found that an RFC limitation prohibiting work "requiring a production rate or demand pace" did not provide "enough information to understand what those terms mean." Id. Accordingly, the Court held that, "[w]ithout further explanation," it would not determine "whether the RFC finding—particularly the portion restricting Thomas to jobs that do not require a 'production rate' or 'demand pace'"—properly account[ed] for Thomas's moderate limitations in concentration, persistence, and pace." Id. at n.5; see also Perry v. Berryhill, 765 F. App'x 869 (4th Cir. 2019) (finding that the failure to define the term "non-production oriented work setting" precluded meaningful review).

8

Defendant, in turn, contends that the RFC in the present case provides the "further explanation" absent in Thomas, Perry, and their progeny. The Court agrees. In another Fourth Circuit decision, Sizemore, the Fourth Circuit held that substantial evidence supported a limitation to "low stress non-production jobs with no public contact." 878 F.3d at 80-81. Notably, the Perry court explained that in Sizemore, the term "non-production jobs" allowed meaningful review because of the "additional context" provided by the ALJ's explanation. Specifically, the RFC in Sizemore further limited the plaintiff to work in a "low stress" setting, without any "fast-paced work" or "public contact." Perry, 765 F. App'x at 872, n.1.

Here, as in Sizemore, the ALJ's RFC finding more than adequately accounted for Plaintiff's moderate limitations concentration, persistence, and pace and moderate limitations in adapting or managing oneself. In addition to restricting Plaintiff to work "not performed in a fast-paced production environment," the ALJ limited Plaintiff to work involving (1) only simple, routine, repetitive tasks, (2) no fast-paced production, (3) low stress work defined as only occasional decision-making and only occasional changes in the work setting, (4) occasional interaction with coworkers and supervisors, and (5) no interaction with the public. (Tr. at 18.) Most importantly, the ALJ specifically found Plaintiff capable of maintaining concentration, persistence, and pace for two hours at a time before requiring a regularly scheduled break. (Tr. at 18.)[5]

---

[5] In a similar recent case from within the Fourth Circuit, the District Court for the Western District of North Carolina found that
> the use of the term "non-production workplace setting" is not so indefinite in this context that the case must be remanded. The Court understands the phrase simply to refer to jobs which do not involve participating in the production of goods, such as on an assembly line. In support of his position that the term is too ambiguous, Plaintiff cites Thomas v. Berryhill, 916 F.3d 307, 311–12 (4th Cir. 2019), where the Fourth Circuit found that the ALJ erred by failing to explain the meaning of an RFC restriction to jobs that do not require "a production rate or

Further, to the extent that Thomas and Perry involved a lack of sufficient explanation of the phrases "non-production oriented work setting" or work "requiring a production rate or demand pace," the ALJ in the present case specifically addressed that issue and engaged with the Vocational Expert in detail. First, the ALJ noted that a prior administrative decision had found that Plaintiff

> had the residual functional capacity to perform a full range of work at all exertional levels; however, she as limited to simple, routine, repetitive tasks in a <u>non-production centered, low stress role</u>.

(Tr. at 13, 66 (emphasis added).) The ALJ considered that prior determination as required by <u>Albright v. Commissioner of Social Security</u>, 174 F.3d 473 (4th Cir. 1999); AR 00-1(4), and explained that he "agrees with the prior residual functional capacity finding, but has <u>modified this to include more precise language</u>." (Tr. at 14 (emphasis added).) The ALJ similarly considered the opinions of the state agency psychiatric consultants, Dr. Margaret Barham and Dr. Darolyn Hilts, both of whom concluded that Plaintiff could adjust to routine workplace changes "in a <u>non-stressful and non-production oriented work environment</u>." (Tr. at 84, 112 (emphasis added).) The ALJ found these opinions persuasive, explaining that:

> The undersigned is partially persuaded by the opinions of the state agency psychiatric consultants. The undersigned agrees the claimant would be capable of understanding and retaining at least simple instructions, that she could maintain concentration, persistence, and pace for two hour periods during a typical eight hour workday, and that she could tolerate coworkers and supervisors with only incidental contact with the general public. These opinions are supported by the evidence of record which generally reflects the claimant

---

demand schedule." However, unlike in Thomas, the "production" restriction at issue here does not relate to the *pace* of the job but rather only to its general nature. Indeed, Plaintiff's RFC has a separate specific limitation for "pace," stating that Plaintiff is "capable of sustaining concentration and pace for two hour segments during a standard eight-hour day."

Gravel v. Kijakazi, No. 5:21-CV-178-KDB, 2022 WL 3008437, at *3 (W.D.N.C. July 28, 2022).

10

Case 1:23-cv-00092-JEP   Document 13   Filed 09/24/24   Page 10 of 14

being cognitively intact, which does not reflect the claimant having significant deficits in her memory, and which does not reflect significant deficits in her concentration. Further, since the alleged onset date the record reflects the claimant has been able to travel out of town, use public transportation, attend college courses and complete an associate degree, sing at church, and socialize with friends and family.

(Tr. at 27.) However, the ALJ noted that the terms "non-stressful" and "non-production" can be vague, so the ALJ explained that he "accounted for [Plaintiff's] limitations in adaption by limiting her to <u>no fast-paced production and included a limitation of low stress work, which is specifically defined in the residual functional capacity finding</u>." (Tr. at 28.) Therefore, the ALJ did not simply limit Plaintiff to a "non-production centered, low stress role" without further explanation as in the prior administrative decision, nor did the ALJ directly incorporate the state agency consultants' suggestion of "a non-stressful and non-production oriented work environment" without further explanation. Instead, the ALJ included further context, adopting the RFC finding that Plaintiff was "able to understand, remember, and carry out simple tasks while maintaining attention and concentration for two hours at a time before requiring a regularly scheduled break" with a limitation to "<u>no fast-paced production; low stress work defined as only occasional decision-making and only occasional changes in the work setting; occasional interaction with coworkers and supervisors; and no interaction with the public</u>." (Tr. at 18 (emphasis added).) Notably, many cases in this circuit reflect that ALJs frequently, and without error or objection, include limitations to work not requiring fast-paced production or rigid quotas. <u>Green v. Berryhill</u>, No. TMD 15-3467, 2017 WL 1048155, at *8 (D. Md. Mar. 20, 2017); <u>Winston v. Colvin</u>, No. 4:13-CV-221-FL, 2015 WL 450835, at *3 (E.D.N.C. Feb. 3, 2015); <u>Nelson v. Colvin</u>, No. 4:11-03367-TER, 2013 WL 4647531, at *3 (D.S.C. Aug. 29, 2013); <u>see also</u> <u>Lamm v. Kijakazi</u>, No. 5:22-CV-138-D, 2023 WL 6167151

11

(E.D.N.C Aug. 18, 2023) ("Here, the ALJ adds context through descriptors that are similar to those in Sizemore. For example, the ALJ limits Plaintiff to 'no fast-paced production,' in the context of a 'in a low-stress setting.'"); Gravel v. Kijakazi, No. 5:21-CV-178-KDB, 2022 WL 3008437, at *3 (W.D.N.C. July 28, 2022) ("[T]he use of the term 'non-production workplace setting' is not so indefinite in this context that the case must be remanded. The Court understands the phrase simply to refer to jobs which do not involve participating in the production of goods, such as on an assembly line.").

In addition, the ALJ had an extended exchange with the Vocational Expert at the hearing to provide additional context for these limitations. The ALJ asked the Vocational Expert about "goal based production work that's measured by end result, not pace work," and the Vocational Expert confirmed that the representative jobs of (1) remnant sorter, DOT 789.687-146, 1991 WL 681286, (2) garment sorter, DOT 222.687-014, 1991 WL 672131, and (3) garment folder, DOT 789.687-066, 1991 WL 681266, were consistent with that limitation because they involved "no production" and instead involved "separating clothes, folding clothes, or even hanging clothes." (Tr. at 50-51.) The Vocational Expert testified that she was familiar with the various environments where these jobs were performed and was familiar with the jobs and the requirements of the jobs. The ALJ then confirmed that those jobs would be consistent with a limitation to "jobs that do not require fast paced production." (Tr. at 52.) Thus, the ALJ specifically discussed this limitation and the context with the Vocational Expert, and included in the RFC additional specific limitations to address any vagueness concerns in the prior administrative decision and state agency consultant opinions. See Perry, 765 F. App'x at 869 n.1 ("We note that in Sizemore v. Berryhill, 878 F.3d 72, 80-81 (4th Cir. 2017), we found

that an ALJ had adequately explained a residual functional capacity assessment that restricted the claimant, in part, to 'non-production jobs.' But in contrast to this case and to Thomas, the ALJ in Sizemore provided additional context, explaining that the claimant could perform work only in a 'low stress' setting, without any 'fast-paced work' or 'public contact,' to account for moderate limitations in concentration, persistence and pace. Id. at 79 (internal quotations omitted). Those descriptors helped to explain the restriction intended by the ALJ, and allowed us to evaluate whether that restriction adequately accounted for the claimant's limitations.").

Finally, the Court notes that a similar recent decision by the Western District of North Carolina also posits "an independent reason to affirm the ALJ's decision on this point," explaining that none of the jobs the ALJ relied on at step five "involve a 'production' setting of any kind." Gravel, 2022 WL 3008437, at *3. Accordingly, the Gravel court concluded that "the 'production' limitation was in practical effect irrelevant to the ALJ's ultimate decision and thus would be harmless error if it was error at all." Id. (citing Shinseki v. Sanders, 556 U.S. 396, 407-10 (2009) (requiring the party attacking an administrative decision to prove that an error harmed her case)). As Defendant correctly asserts, the same holds true in the present case. At step five, the ALJ identified three jobs that Plaintiff remained capable of performing despite her impairments: (1) remnant sorter (DOT 789.687-146), (2) garment sorter (DOT 222.687-014), and (3) garment folder (DOT 789.687-066). (Tr. at 29.) Nothing in the DOT job descriptions in any way suggests that any of the jobs in question involve "production" work, and the Vocational Expert testified that there is "no production" in these positions. (Tr. at 51.).

Overall, the Court concludes that the ALJ included multiple RFC restrictions sufficiently addressing Plaintiff's limitations in concentration, persistence, and pace and in adapting or managing oneself, and sufficiently providing context and explanation for the limitations included in the RFC. Moreover, even if the ALJ had erred by failing to define the production limitation in this case, the ALJ's finding at step five of the sequential analysis rendered any such error harmless.

IT IS THEREFORE ORDERED that the Commissioner's decision finding of no disability is AFFIRMED, that Plaintiff's Dispositive Brief [Doc. #8] is DENIED, that Defendant's Dispositive Brief [Doc. #10] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 24th day of September, 2024.

Joi Elizabeth Peake
United States Magistrate Judge